# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN MOUSSAVI, | CASE NO. 15cv1698-LAB (KSC) |
| Plaintiff, | |
| vs. | **ORDER OF DISMISSAL** |
| SHAHNAZ ZAHEDY; MARYAN FARSI JOHNY; and DOES 1-100, | |
| Defendants. | |

Under the Federal Rules of Civil Procedure, an indispensable party must be joined to an action, claims grounded in fraud must be pled with particularity, and all claims must be pled with plausibility. Ryan Moussavi didn't meet any of those requirements. He failed to add his brother to the action, didn't provide the particulars of loans obtained through fraud, and made implausible claims—for example, he maintains that his stepmom engaged in racketeering when she provided marijuana to her husband who was battling brain cancer. The Court dismisses the action.

## Background

Five years ago, Bijan Moussavi deeded his sons Ryan and Bryndon Moussavi "equal shares" of two rental properties in Kansas where the brothers live.[1] A few months later, Mr. Moussavi developed brain cancer. Ryan's stepmom, Shahnaz Zahedy, cared for Mr.

---

[1] Defendants dispute this claim with a declaration explaining that the deeds were never delivered and the properties were intended to pass to Ryan and Bryndon after their dad died. Zahedy Declaration, Dkt. 14-2.

Moussavi in his Carlsbad home for the next two years. Ryan says Zahedy's sister, Maryan Farsi Johny, also moved into the house and helped care for Mr. Moussavi.

The remainder of the Complaint tells a confusing, inchoate story. Ryan maintains that his stepmom and her sister, "in addition to providing medications" to Mr. Moussavi, began giving him "marijuana to keep Decedent heavily incapacitated at all times." The Defendants used the marijuana to persuade Mr. Moussavi "to assist them in their unlawful intentions to take and wrongfully withhold money from Plaintiff." Apparently, Ryan is claiming that his stepmom and her sister would provide Mr. Moussavi marijuana, and once the cannabis kicked-in, they would convince Mr. Moussavi to call Ryan to request money for medical care. Ryan says these requests resulted in two "loans."[2]

### 1. The $80,000 Loan

Ryan says he loaned the Defendants $80,000 "to help with Decedent's costs." Defendants paid back $50,000, but still owe him $30,000. He maintains that a week after his dad died, he wrote to his stepmom demanding repayment, and she "agreed and affirmed her duty to pay Plaintiff back" "upon the sale of real estate." Ryan doesn't offer any other details about this agreement.[3]

### 2. The $160,000 Loan

Ryan also says the Defendants told him that his dad "needed money to pay medical bills." Ryan "quickly agreed to loan Defendants the rental income" from the two Kansas properties. Ryan says it was his "understanding that all Rental Income loaned to Defendants would be paid back" after his dad died. Ryan doesn't offer any other details about this agreement either.

Instead, Ryan says the Defendants didn't use "the loaned money as agreed" because they spent it on "controlled substances." He also maintains that the Defendants collected "monthly paychecks" from the renters "even after Mr. Moussavi" died, despite Ryan "asking them to desist and to return the rental income." In total, Ryan says he's owed $166,150.[4]

---

[2] Second Amended Complaint, Dkt. 13 at 3-5.
[3] *Id.* at 5–6.
[4] *Id.*

### 3. The $2 million Personal Property

Finally, Ryan says that after his dad died, he "became entitled to certain personal items." Ryan demands "recovery of those certain personal items of Decedent, including but not limited to, the Iranian birth certificate or $2,000,000." Ryan doesn't say what the personal items are, why he's entitled to the items, or how he estimates the items' worth at $2 million.[5]

\* \* \*

Ryan commenced this action about two years ago. He's on his third complaint. And the Court ordered him to show cause for failure to prosecute after he let the case sit dormant for about nine months. Despite all that time, he failed to join his brother Bryndon to the action. Both parties agree Bryndon is an indispensable party since he allegedly has a right to half of the rental income. The Defendants moved to dismiss the Complaint.

## Legal Standard

To survive a motion to dismiss, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But here "the complaint as a whole must satisfy the heightened pleading requirements of Rule 9(b)" since it alleges a "unified fraudulent course of conduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

## Analysis

The Court dismisses the Complaint on three independent bases. First, for failure to plead claims grounded in fraud with particularity under Rule 9(b). Second, for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Third, for failure to join an indispensable party under Rule 12(b)(7).

### A. Particularity

"When an entire complaint . . . is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint." *Vess*, 317 F.3d at 1107 (9th Cir. 2003). Ryan alleges that his stepmom and her sister engaged in a "fraudulent scheme" by claiming they needed money to cover Mr. Moussavi's medical bills, but instead used the money to buy marijuana. Ryan also maintains

---
[5] *Id.* at 7, 12.

that his stepmom lied to the renters in Kansas by claiming she was the "rightful beneficiary" of the rental income.[6]

Allegations "of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Id.* at 1106. Ryan doesn't offer these details. The Complaint doesn't explain who, specifically, was a party to the loan agreements; what the terms were; or when, where, and how the agreements were made. The Complaint also lacks any details about the alleged misrepresentations that the Defendants made to Ryan and the renters—the Court has no idea who said what and when.

Instead, Ryan argues that there isn't any "doubt that the facts as pleaded are peculiarly within the knowledge of Defendants." The Court disagrees. If anyone knows who Ryan spoke to, what Ryan spoke to them about, and when Ryan spoke to them, it's Ryan. The Court dismisses the complaint for failing to meet the heightened standard of particularity. Fed. R. Civ. P. 9(b).[7]

**B.     Plausibility**

The Court also dismisses all of the causes of action for failure to state a claim that satisfies the plausibility standard. Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570.

**1.     RICO**

The Racketeer Influenced and Corrupt Organizations Act was enacted to combat "the infiltration of legitimate businesses by organized crime." *United States v. Turkette*, 452 U.S. 576, 593 (1981). The Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

Racketeering activity covers a wide range of conduct, but Ryan draws on the statute's ban on "dealing in a controlled substance." § 1961(1). Ryan argues that his stepmom, her sister, and unknown Does constituted an enterprise engaged in a pattern of racketeering because they supplied marijuana to his dad. This isn't a plausible RICO claim. It's a financial

---

[6] Dkt.13 at 9.
[7] Opposition, Dkt. 18 at 12.

dispute between a son and his stepmom. But Ryan's claim suffers from specific pleading problems as well.

First, the Complaint doesn't plausibly allege that Ryan's stepmom and her sister were employed by or associated with a separate enterprise. *See Rae v. Union Bank*, 725 F.2d 478, 480 (9th Cir. 1984). An enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." Ryan must allege the existence "of an ongoing organization" where "various associates function as a continuing unit." *Turkette*, 452 U.S. at 583 (1981). Pleading unknown Doe defendants as the missing members of the enterprise doesn't do the trick here: it's not plausible that a wife providing her dying husband with marijuana is engaged with unknown Doe's in an "ongoing organization" that functions "as a continuing unit" for the "common purpose" of taking Ryan's money.

Second, "[a] RICO plaintiff must show that a defendant's predicate acts were the 'but-for' and proximate cause of the alleged injury." *Ahn v. Hanil Dev., Inc.*, 471 F. App'x 615, 617 (9th Cir. 2012). Ryan hasn't plausibly pled that the "racketeering activity" caused damage to his "business"—that is, his stepmom's "distribution" of drugs to his dad is too attenuated with her current failure to return rental income to Ryan. *See Hemi Grp., LLC v. City of N.Y., N.Y.*, 559 U.S. 1, 9 (2010) ("A link that is too remote" "is insufficient").

Third, it's implausible that providing marijuana to a spouse affects interstate commerce. Ryan offers a single conclusory statement to support this element. Defendants challenged Ryan to address this problem in his opposition; he didn't. *See Abogados v. AT&T, Inc.*, 223 F.3d 932, 937 (9th Cir. 2000) (waiver for failing to address issue).

**2.    Breach of Contract**

To state a claim for breach of contract, Ryan must first allege the formation of a contract: (i) that the parties agreed to give each other something of value; (ii) the contract terms were clear enough that the parties understood what each was required to do; and (iii) that the parties agreed to the terms. *See* CACI 302. "Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity." *Levy v. State Farm Mut. Auto. Ins. Co.,* 150 Cal. App. 4th 1, 5 (2007).

Ryan hasn't plausibly alleged the formation and breach of a contract. Ryan says he loaned the defendants $80,000 but he's still owed $30,000. The only factual support is his allegation that his stepmom said she would "repay him" after selling some property but she didn't. Ryan doesn't offer any other details about when the contract was formed or what the terms were. Ryan doesn't cite any legal authority either. Instead, he asserts that "Defendant's arguments about the loan and its terms being vague are without merit as Defendants clearly understand what is alleged to still be owed to Plaintiff."[8]

That may be. But Ryan's asking the Court to take his word for it that a contract was formed. At this stage, the Court must assume his version of the facts as true, but it doesn't need to accept legal conclusions. Ryan labels this a "loan," but he hasn't pled facts that allow the Court to infer that his stepmom and her sister entered and breached a legally enforceable agreement. It's *conceivable* that Ryan has a breach of contract claim, but he hasn't offered enough specific facts for the Court to find the claim is *plausible*.[9]

### 3. Conversion

To state a claim for conversion, Ryan must allege that: (i) he had a right to possess an item of personal property; (ii) the Defendants intentionally and substantially interfered with Ryan's property by taking possession of it or preventing him from having access to it; (iii) Ryan didn't consent; and (iv) Defendants' conduct was a substantial factor in causing Ryan's harm. *See* CACI 2100.

Ryan claims that the Defendants have converted (a) the money owed for both loans and (b) "certain personal items" including his dad's "Iranian birth certificate." Ryan hasn't plausibly alleged conversion for either of these claims.

#### (a) Loans

Ryan's claims for unpaid "loans" sound in contract, not tort. *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 452 (1997) ("a mere contractual right of payment, without more, will not suffice" to state a conversion claim); *Kim v. Westmoore Partners, Inc.*, 201 Cal. App. 4th 267, 284 (2011) (dismissing conversion claim "because the simple failure to pay money

---

[8] Dkt. 18 at 4.
[9] Even if he had stated a claim, $30,000 doesn't meet the amount in controversy necessary for diversity jurisdiction.

owed does not constitute conversion.") But there are more specific pleading problems with Ryan's conversion claims.

First, an "action for conversion of money can be stated only where a defendant interferes with the plaintiff's possessory interest in a specific, identifiable sum, such as when a trustee or agent misappropriates the money entrusted to him." *Kim*, 201 Cal. App. 4th at 284 (emphasis omitted). Ryan says that on an unspecified number of occasions, the Defendants asked for an unspecified amount of money, and his dad "would, unknowingly, affirm the false requests for more money." Then, at some unspecified time, Ryan discovered the money was being spent on marijuana, which violated some unspecified term of the agreement, and he demanded that his stepmom return all of the loaned money. Those allegations fail to plausibly allege that Ryan entrusted a specific amount of money to his stepmom to act as his trustee or agent. *C.f. Haigler v. Donnelly*, 18 Cal. 2d 674, 681 (1941) ("A *broker or agent* is ordinarily liable for converting the funds of his *principal* when he refuses to account for them.") (emphasis added).[10]

Second, Zahedy says that her husband "obtained a prescription for marijuana because his doctor thought correctly that it would slow the progress of his brain cancer." Ryan doesn't dispute this claim. Therefore, even if Ryan entrusted his stepmom with money for the specific purpose of paying for his dad's medical needs, Ryan hasn't plausibly explained why spending that money on a medical prescription amounts to misappropriation.[11]

Third, the "law is well settled that there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property." *Farrington v. A. Teichert & Son*, 59 Cal. App. 2d 468, 474 (1943). Ryan admits that he consented to the Defendants borrowing money to pay for his dad's medical expenses. But at some point, he no longer consented. Ryan doesn't say when that occurred. Ryan hasn't alleged enough facts for the Court to find that the Defendants "substantially interfered" with

---

[10] Dkt. 13 at 4.
[11] Motion to Dismiss, Dkt. 14-1 at 3; Dkt. 14-2.

his right to rental income from January 2013 through January 2015. Ryan hasn't stated a claim for conversion of the loans.[12]

### (b) Personal Property

Under the probate exception, the court is barred "from endeavoring to dispose of property that is in the custody of a state probate court" and "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate." *Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006); *Williams v. Madera Superior Court*, 2016 WL 6892539, at *1 (9th Cir. Nov. 23, 2016) (affirming dismissal because "federal courts lack jurisdiction over probate matters"). The claim for "certain personal property" isn't good enough. The Court has no basis to conclude that Ryan has a right to unspecified property.

The Defendants argue that all of the personal items passed to Ryan's stepmom under the trust and estate planning documents. Defendants say Ryan's dispute is with his dad's will—he can challenge it in California probate court, but a federal forum isn't appropriate. The Court agrees. Ryan had an opportunity to identify the property and to explain why he's entitled to other personal effects that belonged to his dad but that don't implicate probate issues. He didn't. *See Abogados*, 223 F.3d at 937 (9th Cir. 2000).

### 4. Interference with prospective economic relationship

To state a claim for intentional or negligent interference with a prospective economic relationship, Ryan must allege that (i) he was in an economic relationship with the rental property owners that probably would have resulted in economic benefit to him; (ii) that the Defendants knew about the relationship; (iii) Defendants engaged in some wrongful conduct intended to disrupt the relationship (intentional), or, failed to act with reasonable care (negligence); (iv) Defendants disrupted the relationship; and (v) Defendants conduct was a substantial factor in causing harm. *See* CACI 2202, 2204.

---

[12] Ryan says the Defendants "collected monthly paychecks, either by mail or money wire, even after Mr. Moussavi's father died and despite Mr. Moussavi asking them to desist and to return the rental income." Ryan's dad died in mid-January 2015 and Ryan says he wants rental income through February 2015. At best, those allegations suggest that the Defendants interfered with his right to collect one month's rent after his dad died. (A sum well short of the jurisdictional amount in controversy.)

First, Ryan only makes conclusory allegations about the economic relationship. He doesn't provide details about the initial relationship with the renters, how it changed to allow his stepmom to collect rent, or the status of the relationship after Ryan's dad died. Instead, he offers one sentence: "Plaintiff and the tenants of the Rental Properties were in an economic relationship." Ryan hasn't given the Court enough information to find a plausible claim of interference with a prospective economic relationship.[13]

Second, Ryan hasn't plausibly alleged disruption of the relationship for many of the same reasons he failed to allege interference for the conversion claim. He admits that he "quickly agreed to loan Defendants the rental income from the Rental properties" but it "was his understanding that all Rental Income loaned to Defendants would be paid back after Decedent deceased." He can't claim the Defendants disrupted the relationship when he agreed to let them interfere in that relationship by collecting the rent for some unspecified amount of time.[14]

**C.     Indispensable Party**

"Where, as here, an indispensable party is not before the court, dismissal must follow." *Franz v. E. Columbia Basin Irr. Dist.*, 383 F.2d 391, 392 (9th Cir. 1967). Everyone agrees that Bryndon Moussavi is an indispensable party since he allegedly is entitled to half of the rental income. Since Bryndon wasn't joined as a party, dismissal must follow. Fed. R. Civ. P. 12(b)(7). The Court declines to address Ryan's motion to add Bryndon to the action: since the Court dismisses the Complaint under Rules 9 and 12 without leave to amend, that request is moot.

**Conclusion**

The Court "may exercise its discretion to deny leave to amend due to undue delay" "repeated failure to cure deficiencies by amendments previously allowed" as well as "undue prejudice to the opposing party." *Carvalho v. Equifax Info. Servs.*, LLC, 629 F.3d 876, 893 (9th Cir. 2010) (quotations omitted). Ryan Moussavi filed this Complaint almost two years

---

[13] Dkt. 13 at 8, 9.
[14] Ryan says the Defendants continued to act as "rightful owner and collected monthly paychecks, either by mail or money wire" even after his "father died." But that claim fails for the same reason discussed at n.12. Dkt. 18 at 5.

ago. He's had three opportunities to amend his pleadings. The Court has issued two orders to show cause why his Complaint shouldn't be dismissed. Ryan let the case sit dormant for nine months. And the Defendants say he has yet to even serve the Complaint on them.

Given this amount of time, there's no excuse for failing to plead his claims with particularity or failing to join his brother to the suit. Worse, Ryan didn't even respond to the Defendants' argument that the Court should deny leave to file a fourth complaint. The action is dismissed without leave to amend, but without prejudice to Ryan and Bryndon refiling their state-law claims in a state forum.

**IT IS SO ORDERED**.

DATED: May 10, 2017

*Larry A. Burns*
**HONORABLE LARRY ALAN BURNS**
United States District Judge